928 So.2d 295 (2005)
Wanda HARMON
v.
Douglas HARMON.
2031063.
Court of Civil Appeals of Alabama.
November 4, 2005.
*296 John A. Tinney, Roanoke, for appellant.
Dianne James Davis, Alexander City, for appellee.
BRYAN, Judge.
Wanda Harmon ("the wife") appeals a divorce judgment, contending that it awarded her insufficient marital property, insufficient periodic alimony, and insufficient child support. We affirm in part, reverse in part, and remand with instructions.
The wife sued Douglas Harmon ("the husband") for a divorce on the grounds of adultery, incompatibility, and an irretrievable breakdown of the marriage. She requested custody of the parties' minor child. In his answer, the husband denied that he had committed adultery. He counter-claimed for a divorce on the grounds of incompatibility and an irretrievable breakdown of the marriage, but he did not request custody of child. The trial court granted the wife pendente lite custody of the child and ordered the husband to pay $150 per week in pendente lite child support.
On November 18 and 19, 2002, the trial court held a hearing at which it received evidence ore tenus. However, before the *297 trial court entered a judgment, the parties entered into a settlement agreement on June 5, 2003, allocating between them the ownership of certain items of personal property, the equity in the marital residence, and the mortgage indebtedness owed on the marital residence. In the agreement, the parties also requested that the trial court, in dividing the marital property, take into account the property the parties had already allocated to each other in the settlement agreement. In the agreement, the parties further agreed to submit all issues not included in the agreement for decision by the trial court.
On June 11, 2003, the trial court entered a partial judgment that divorced the parties on the grounds of incompatibility and adultery on the part of the husband and that adopted the parties' settlement agreement; the trial court reserved jurisdiction to rule on all remaining issues. On August 13, 2004, the trial court entered a final judgment that, among other things, divided the marital assets between the parties, awarded the wife primary physical custody of the child, awarded the wife $150 in weekly child support, awarded the wife $500 per month in alimony, and awarded the wife an attorney's fee of $7,000.
In accordance with the parties' settlement agreement, the final judgment provided that the wife would convey her interest in the marital residence to the husband and that the husband would pay all of the $323,130.55 in mortgage indebtedness owed on the marital residence. It also provided, in accordance with the settlement agreement, that the husband would sell the marital residence and that the wife would receive $50,000 of the equity in the marital residence from the sale proceeds and the husband would receive $20,000 of the equity in the marital residence from the sale proceeds.
In addition, the final judgment awarded the wife the parties' 2001 GMC Yukon sport-utility vehicle, which was valued at $32,000 and all other property in her possession. The property in her possession included a $500 bank account and $10,000 life insurance policy. In addition to the property awarded to the wife in the final judgment, the parties had agreed in the settlement agreement that the wife would receive furniture and other personal items with an approximate value of $22,150.
The final judgment awarded the husband all property in his possession. The property in the husband's possession included $1,000 in cash or bank accounts and a life insurance policy insuring the life of the husband. This policy gives the husband's brother the option to purchase certain stock with the proceeds of the policy. The wife testified that this life insurance policy has a value of $1 million dollars while the husband testified that it has a value of $500,000. The property in the husband's possession also included another life insurance policy insuring the life of the husband and having a value of $500,000; a 401(k) retirement account with a value of $11,000; an ownership interest in Harmon Engineering and Construction Company, Inc. ("Harmon Engineering"); and an ownership interest in Harmon Properties, Inc. ("Harmon Properties"). The final judgment also ordered the husband to pay the outstanding indebtedness on the 2001 Yukon. In addition to the property awarded to the husband by the final judgment, the parties had agreed in the settlement agreement that the husband would receive other personal property with a value of approximately $12,000.
The final judgment awarded the wife $150 per week in child support and ordered the husband to pay the child's coverage for medical and dental insurance, one-half of the child's medical and dental *298 charges not covered by his insurance, and the child's private-school tuition. The final judgment further provided that, if the child enrolls in a public school, the husband must pay an amount equal to one-half of the child's private-school tuition as child support in addition to the $150 per week. The record does not contain any Child Support Obligation Income Statement/Affidavit ("CS-41") or Child Support Guidelines ("CS-42") forms. The wife timely appealed the final judgment entered by the trial court.
On appeal, the wife first argues that the trial court erred in failing to award her an equitable portion of certain properties and in awarding an insufficient amount of periodic alimony.
"The well-established standard of review is that a divorce judgment based on ore tenus evidence is presumed correct. See Robinson v. Robinson, 795 So.2d 729 (Ala.Civ.App.2001). Such a judgment will be reversed only where it is unsupported by the evidence so as to be plainly and palpably wrong. Id. at 733. On appeal the division of property and the award of alimony are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either issue. See O'Neal v. O'Neal, 678 So.2d 161 (Ala.Civ.App.1996). A property division does not have to be equal in order to be equitable based on the particular facts of each case; a determination of what is equitable rests within the sound discretion of the trial court. See Golden v. Golden, 681 So.2d 605 (Ala.Civ.App. 1996).
"When dividing marital property and determining a party's need for alimony, a trial court should consider several factors, including `"the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source, value, and type of property owned, and the standard of living to which the parties have become accustomed during the marriage."' Ex parte Elliott, 782 So.2d 308 (Ala.2000) (quoting Nowell v. Nowell, 474 So.2d 1128, 1129 (Ala.Civ.App.1985)) (footnote omitted). In addition, the trial court may also consider the conduct of the parties with regard to the breakdown of the marriage, even where the parties are divorced on the basis of incompatibility,. . . . Ex parte Drummond, 785 So.2d 358 (Ala.2000); Myrick v. Myrick, 714 So.2d 311 (Ala.Civ.App.1998)."
Baggett v. Baggett, 855 So.2d 556, 559-60 (Ala.Civ.App.2003).
The parties were married in 1990. One child was born of the marriage. The wife was 47 years old at the time of trial. Her health problems include an irregular heartbeat, arthritis in her hands, and a pinched nerve in her neck. She also has had surgery, which restricts her ability to lift heavy objects. Finally, she began taking antidepressants after the parties separated in September 2001.
The wife worked inside the home during most of the marriage. However, she has worked in the nursery business, the radio-broadcasting industry, and the publishing industry. After the parties separated, the wife applied unsuccessfully for several jobs. Moreover, she unsuccessfully attempted to start up several businesses. The wife currently works as a personal and production assistant for Community Service Network and earns $150 a week. The wife has an associate degree in horticulture. In addition, she has taken one year of course work in special education and some of the classes that would qualify her for a position as a travel agent.
The husband was 33 years old at the time of trial. His mobility is somewhat limited due to a neck injury he suffered in *299 an accident. The husband is employed at Harmon Engineering. He has completed two years of college course work, but he has not obtained a college degree.
At the time of trial, the husband was earning a salary of $48,000 from Harmon Engineering. However, the wife introduced evidence establishing that the husband reported an annual income of approximately $346,000 for the tax year 1999 and approximately $352,000 for the tax year 2000. The husband reported an annual income of approximately $133,000 for the tax year 2001. The husband testified that his income for 1999 and 2000 were unusually high because Harmon Engineering was extraordinarily lucrative in those years. The husband estimated his income for 2002 at between $80,000 and $85,000.
The husband owns a 42.5% interest in Harmon Engineering and a 20% interest in Harmon Properties. His interest in Harmon Engineering is valued at $675,000. Additionally, the husband testified that his interest in Harmon Properties is valued at $120,000; however, the wife introduced evidence tending to prove that his interest in Harmon Properties has a value of $362,574. In addition, the husband testified that he and his brother jointly own property located in LaFayette, Alabama ("the LaFayette property"), with an estimated value of $9,100.
The trial court also received evidence regarding the parties' debts. The wife incurred $7,246 in credit-card debt after the parties separated. She testified that she incurred the debt because the husband was in arrears in paying his child-support obligation. Her monthly expenses are approximately $2,130 per month. The husband testified that his monthly expenses total approximately $5,618. The husband testified that he pays one-half of the expenses of his paramour's monthly mortgage, utilities, and groceries. The husband's debts total approximately $83,000.
With regard to the cause of the breakdown of the marriage, the evidence was undisputed that the husband had physically and verbally abused the wife. Moreover, the wife testified that the husband had assaulted their child. The husband testified that the wife had verbally abused him and struck him on several occasions. In addition, the husband testified that the wife drank excessively in the past. Although he testified that the wife was faithful throughout the marriage, the husband testified that she had withheld her affection from him.
Additionally, the evidence established that the husband had begun a relationship with another woman while the parties were married. The husband had begun living with the other woman six or seven months before trial. Although the husband denied that he and the other woman had engaged in sexual relations before the parties' separation in September 2001, he admitted to engaging in such relations one month before trial. The wife also admitted that she had engaged in sexual relations with another man after the parties' separation, although she testified that she did so under the misapprehension that the parties had already divorced.
The wife argues that the trial court erred in its periodic-alimony award. However, considering the trial court's award of approximately $114,650 in marital property to the wife, we cannot hold that the trial court's award of $500 per month in periodic alimony constituted an abuse of discretion.
The wife also argues that the trial court erred in failing to award her any interest in Harmon Engineering, Harmon Properties, or the LaFayette property. *300 Section 30-2-51(a), Ala.Code 1975, states, in pertinent part:
"If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage."

(Emphasis added.) Moreover,
"[n]othing in [§ 30-2-51] states that if one party's inheritance or gifts are used for the parties' common benefit then the trial judge must consider the inheritance or gifts when making the property division. In fact, the statute leaves such a determination to the discretion of the trial judge. `[T]he judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family.' Section 30-2-51(a), Ala.Code 1975."
Ex parte Drummond, 785 So.2d 358, 362 (Ala.2000).
The husband testified that he acquired his interests in Harmon Properties and Harmon Engineering by gifts from his father. He also testified that he acquired his interest in Harmon Properties before the parties married. However, he acquired all of his interest in Harmon Engineering in 1994, after the parties had married. In addition to his annual salary, the husband receives periodic distributions from Harmon Engineering and annual distributions from Harmon Properties. He used the distributions from Harmon Properties solely for the payment of taxes. However, the husband testified that he used his distributions from his stock ownership and salary from Harmon Engineering to pay expenses during the marriage.
Although the husband used the periodic distributions from Harmon Engineering for the common benefit of the marriage, the trial court had discretion to allocate the husband's interest in Harmon Engineering. Ex parte Drummond, 785 So.2d at 361-62; see also Ex parte Durbin, 818 So.2d 404 (Ala.2001); and Long v. Long, 824 So.2d 778 (Ala.Civ.App.2001). Furthermore, the evidence would support a finding that the husband did not use his income from Harmon Properties regularly for the common benefit of the marriage. Moreover, even if the trial court found that the income from Harmon Properties was regularly used for the common benefit of the marriage, the trial court has discretion in dividing such property. Ex parte Drummond, supra. Therefore, we cannot hold that the trial court erred in failing to award the wife any interest in Harmon Properties or Harmon Engineering.
With regard to the LaFayette property, the husband testified that he owns a one-half interest in that property and that his one-half interest has a value of $4,550. Given the trial court's award of approximately $114,650 in marital assets to the wife, we also conclude that the trial court did not abuse its discretion in failing to award the wife any interest in the La-Fayette property.
The wife next argues that the trial court's awards to her of marital property and alimony were insufficient in light of its finding that the husband committed adultery. The supreme court has held:

*301 "`A trial judge does not have to ... divide the property in light of one party's adultery unless the failure to do so would be palpably wrong in light of extensive evidence of adultery.'
"[Ex parte O'Daniel, 515 So.2d 1250, 1253 (Ala.1987).] (Emphasis added.) See also Jordan v. Jordan, 802 So.2d 238, 240 (Ala.Civ.App.2001); and Wilkerson v. Wilkerson, 719 So.2d 235, 237 (Ala.Civ.App.1998). One of the `[f]actors the trial court should consider in its award of alimony and its division of property [includes] the conduct of the parties in relation to the marriage.' Turner v. Turner, 804 So.2d 1118, 1120 (Ala.Civ.App.2001)."
Ex parte Evans, 875 So.2d 297, 300 (Ala. 2003).
The final judgment states, in pertinent part:
"Specifically, the court has considered [the husband's] fault in bringing on this action. It was clear from the testimony that in addition to all of the other problems existing between the parties [the husband] became involved with another woman. In spite of the fact that [the husband] testified that no intimate relationship existed prior to separation the court is satisfied that this relationship was principally the cause of the end of this marriage."
(R. 169.)
Thus, the trial court considered the evidence of the husband's fault in causing the breakdown of the marriage. Given the broad discretion accorded a trial court in dividing marital property and awarding periodic alimony, Merchant v. Merchant, 638 So.2d 3 (Ala.Civ.App.1994), we cannot hold that the trial court abused that discretion.
Last, the wife argues that the trial court erred in awarding her only $150 per week in child support because, she says, the CS-41 and CS-42 forms were not completed and the trial court did not award child support in accordance with Rule 32, Ala. R. Jud. Admin.
The trial court received ore tenus evidence regarding the parties' income in the hearing on the wife's motion for pendente lite custody. However, the record on appeal does not contain a transcript of that hearing. The order awarding the wife pendente lite custody states, in pertinent part:
"Counsel did not submit any documents required by Rule 32 of the Rules of Judicial Administration. However, counsel for plaintiff did introduce the front page of the parties' tax returns for the tax years of 1999 and 2000. Defendant testified that those tax years were unusually high and that his present income would be between forty thousand and fifty thousand dollars."
(R. 25.) In Horwitz v. Horwitz, 739 So.2d 1118, 1120 (Ala.Civ.App.1999), this court stated:
"Rule 32(E), Ala. R. Jud. Admin., provides that `a standardized Child Support Guidelines form and a Child Support Obligation Income Statement/Affidavit form shall be filed in each action to establish or modify child support obligations and shall be of record and shall be deemed to be incorporated by reference in the court's child support order.' Thus, Rule 32(E) mandates the filing of a standardized Child Support Obligation Income Statement/Affidavit."
However,
"we have not, in every instance, reversed a trial court's child-support judgment simply because the requisite forms were not contained in the record. See Rimpf v. Campbell, 853 So.2d 957, 959 (Ala.Civ.App.2002); Mosley v. Mosley, *302 747 So.2d 894, 898 (Ala.Civ.App.1999); and Dismukes v. Dorsey, 686 So.2d 298, 301 (Ala.Civ.App.1996) (stating that this court need not reverse a child-support award even though the required forms are not in the record where the record `clearly indicat[es] that the award comports with the evidence regarding the parties' incomes'); see also Devine v. Devine, 812 So.2d 1278, 1282 (Ala.Civ. App.2001). If this court has been able to determine how a trial court computed the child-support obligation based on testimony or other evidence, we have affirmed."
Dunn v. Dunn, 891 So.2d 891, 896 (Ala. Civ.App.2004) (emphasis added). Nevertheless, "`[w]ithout the child support form and the income statement forms, it is difficult and sometimes impossible for an appellate court to determine from the record if the trial court did or did not correctly apply the guidelines in establishing or modifying child support obligations.' Martin v. Martin, 637 So.2d 901, 902-03 (Ala. Civ.App.1994)." Horwitz, 739 So.2d at 1120.
The evidence at trial established that the husband's yearly salary from Harmon Engineering is $48,000. However, the evidence also established that the husband receives other income in addition to his salary. The husband estimated his total income for 2002 to be between $80,000 and $85,000.
"`In accord with Rule 32, Ala. R. Jud. Admin., the trial court must take into account all sources of income of the noncustodial parent when computing support obligations.[[1]] The trial court has no discretion in this matter.... Thus, as recognized by our Supreme Court, the guidelines require the trial court to consider the resources of the parents, and not simply their incomes, in determining child support. Ex parte St. Clair County Dep't of Human Resources, 612 So.2d 482, 483 (Ala.1993).... A trial court's failure to apply the guidelines or to explain why the deviation occurred, requires reversal. See Doll v. Doll, 681 So.2d 601, 602 (Ala.Civ.App.1996).'
"Spillers [v. Spillers, 707 So.2d 256,] at 258 [ (Ala.Civ.App.1997) ]. See also Massey v. Massey, 706 So.2d 1272 (Ala.Civ. App.1997)."
Mosley v. Mosley, 770 So.2d 638, 640 (Ala. Civ.App.2000).
The trial court awarded the wife the equivalent of $650 per month in child support ($150 per week × 52 weeks per year / 12 months). The wife's yearly income is $7,800. The husband's yearly income is $80,000 to $85,000. The parties introduced no evidence regarding the other factors that affect the calculation of child support under Rule 32. However, calculating the husband's child-support obligation under Rule 32 solely on the basis of the husband's percentage share of the parties' combined income would result in a child-support obligation for the husband that is significantly greater than $650 per month. Although, the trial court ordered the husband to pay the child's private-school tuition of $4,600 per year as child support, private school tuition is not "`essential to basic child support.'" See Deas v. Deas, 747 So.2d 332, 337 (Ala.Civ.App. 1999) (quoting Hillis v. Boggs, 646 So.2d 124, 126 (Ala.Civ.App.1994)). Even though *303 the parties stated in their briefs on appeal that the child is no longer enrolled in private school, the record on appeal does not establish this fact. "This Court is bound by the record, and it cannot consider a statement or evidence in a party's brief that was not before the trial court. Ex parte Baker, 459 So.2d 873 (Ala.1984), Wilson v. Crosby Lumber Co., 386 So.2d 1173 (Ala.Civ.App.1980)." Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala.1995). Furthermore, although the trial court also ordered the husband to pay the child's health insurance, the record on appeal does not indicate the cost of retaining the child on the husband's health insurance. Therefore, because the trial court neither awarded child support under Rule 32 on the basis of the husband's percentage share of the parties' combined income nor made an express finding that a deviation from the Rule 32 child-support guidelines was justified, we reverse the judgment as to the award of child support and remand the cause for the trial court to render a child-support award in accordance with Rule 32, Ala. R. Jud. Admin.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and PITTMAN, J., concur.
THOMPSON, J., concurs in part and dissents in part, with writing, which MURDOCK, J., joins.
THOMPSON, Judge, concurring in part and dissenting in part.
I must dissent from that portion of the majority opinion that affirms the trial court's alimony award and property division. The record reveals that the husband is 33 years old and the wife is 47 years old. At the time the wife filed for divorce, the wife had not worked outside the home for approximately 12 years; the wife is now employed and earns approximately $7,800 a year. The wife has monthly expenses of approximately $2,130; her monthly expenses exceed her monthly income by $1,480. The husband reported earning between $80,000 and $85,000 in 2002. The husband estimated his monthly expenses, to be $5,618; he also pays a portion of his girlfriend's monthly expenses. The husband's monthly income exceeds his monthly expenses by at least $1,000. The wife has no retirement benefits whereas the husband owns an interest in the Harmon family businesses worth a combined value of at least $795,000 and a 401(k) retirement account valued at $11,000.
In its judgment, the trial court ordered the husband to pay the wife $500 a month in periodic alimony and awarded the wife $104,650 in marital property.[2] The husband received his interest in the Harmon family businesses worth at least $795,000, and $44,000 in marital property.[3]
While a divorce judgment need not be equal, it must be equitable in light of the particular facts and circumstances of the case. Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996). Although I recognize that issues regarding alimony and the division of marital property rest within a trial court's discretion, the facts of this case support a conclusion that the trial court exceeded its discretion. Marshall v. Marshall, 891 So.2d 883 (Ala.Civ.App.2004). Given the length of the parties' marriage, the parties' ages, the disparity between the parties' income, and the future employment *304 prospects of the parties, I would reverse the judgment of the trial court and remand it for a more equitable distribution of the marital property and alimony award. Accordingly, I dissent.
MURDOCK, J., concurs.
NOTES
[1] Under Rule 32(B)(2)(a), Ala. R. Jud. Admin., "gross income" is defined as "income from any source, and includes, but is not limited to, salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trusts, annuities, capital gains, Social Security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, and preexisting periodic alimony."
[2] The wife also received a life insurance policy with a death benefit in the amount of $10,000.
[3] The trial court also awarded the husband two life insurance policies with a combined minimum death benefit valued at $1,000,000.